**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| IN RE | : | CHAPTER 7 |
| NECTARIOS FATSIS, | : | |
| <u>DEBTOR                              </u> | : | CASE NO.03-19121-JBR |

.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO TRUSTEE'S MOTION TO HOLD DEBTOR IN CONTEMPT FOR VIOLATION OF CONFIRMATION ORDER DATED MAY 13, 2004 AND FOR SANCTIONS**

This matter came before the Court for an evidentiary hearing on the Chapter 7 Trustee's "Motion to Hold Debtor in Contempt for Violation of Confirmation Order Dated May 13, 2004 and for Sanctions" [docket # 431] and the Debtor's objection thereto [docket # 443]. The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. For the reasons set forth herein, the Motion will be GRANTED and sanctions imposed upon the Debtor.

**FACTS**

Although the docket in this case reflects a long and tortuous history, the facts material to the current motion are not in dispute. On October 31, 2003 the Debtor filed a voluntary petition pursuant to Chapter 13 of the United States Bankruptcy Code. Among the assets listed on Debtor's Schedule B was 1,000 shares of EMC stock (the "Stock"), which the Debtor valued at $12,000. The Debtor did not exempt any portion of the Stock.

On May 13, 2004 the Court confirmed the Debtor's Chapter 13 Plan, which had a term of twelve months, and provided for payment in full to all creditors. The confirmation order provided in relevant part:

> Unless otherwise ordered by the Court, all property of the estate as
> defined in 11 U.S.C. §§ 541 and 1306 including, but not limited to,

>    any appreciation of the value of real property owned by the debtor
>    as of the commencement of the case, shall remain property of the
>    estate during the term of the plan and shall vest in the debtor(s)
>    only upon discharge.  All property of the estate shall remain within
>    the exclusive jurisdiction of the bankruptcy court.  The debtor(s)
>    shall not transfer, sell or otherwise alienate property of the estate
>    other than in accordance with the confirmed plan or other order of
>    the bankruptcy court.  The debtor shall be responsible for
>    preserving and protecting property of the estate.

Following confirmation of the plan, the Debtor failed to make the plan payments in a timely manner.  Consequently, on January 10, 2005 the Chapter 13 Trustee moved to dismiss the case and the Debtor objected.  The Court conducted a hearing and ordered the Debtor to pay $17,500 by April 15, 2005 and $17,950 by May 31, 2005.  On April 14, 2005 the Debtor sought an extension of time to make the payments.  On or about April 21, 2005 the Debtor, without any notice or authorization, sold the Stock and received $13,332.43 from the sale.[1]  It appears from the docket that during this period of time, the Debtor was acting *pro se.*  The Chapter 13 Trustee, having no knowledge of the sale, filed a statement that she did not object to the Debtor's request and the Court granted the extension.  The Debtor ultimately made the $17,500 payment in two installments, one on May 10, 2005 in the amount of $10,000 and the other on May 19, 2005 in the amount of $7,500.

On May 26, 2005 the Debtor then sought additional time to make the remaining $17,950 payment.  The Court held a hearing and entered an order, which among other things, required the Debtor to pay $10,000 to the Chapter 13 Trustee by July 31, 2005.  On or about August 11, 2005

---

[1] The Court also notes that the Trustee's Exhibit 1, which includes a printout of the Debtor's Scottrade account, indicates that the Debtor had 100 shares of EMC stock as of November 4, 2004.  The Debtor, acting without notice or authoriziation, sold 100 shares on June 29, 2005, which sale netted $1353.94.

2

the Debtor made the $10,000 payment.  Since that time, the case continued with various disputes not directly relevant to the instant motion.  On or about December 28, 2006, the Debtor sold property located in Somerville, Massachusetts pursuant to Court authority.  Effie Messados and Anastasios Fatsis, received $29,000 and $23,482.93 from the sale proceeds without Court permission.  On November15, 2007, the Court converted the case to one under Chapter 7 and the Chapter 7 Trustee was appointed.

Following conversion, the Chapter 7 Trustee learned from the Debtor at the section 341 meeting[2] that he had transferred the Stock into an account with Scottrade.  The Trustee unsuccessfully attempted to obtained documents regarding the account from the Debtor and subsequently learned that the Debtor had liquidated the Stock.  The Chapter 7 Trustee brought the motion now before the Court in which he is asking to have the Debtor held in contempt and proposes that a sanction of $19,160, the value of the Stock on the conversion date.[3]  The Court held an evidentiary hearing at which the Debtor testified that the money he paid to Effie Messados and Anastasios Fatsis out of the proceeds of the sale of the Somerville property was repayment of money they loaned him to make his plan payments.  Between the sale of the Stock and the money he claims he received from Effie Messados and Anastasios Fatsis, the Debtor received $65,814.43.  The Debtor paid the Chapter 13 Trustee less than this amount.  According

---

[2]Kristin McDonough, counsel to the Chapter 7 Trustee, testified that the Debtor finally appeared for the meeting of creditors in March or April of 2008.  The docket indicates that the meeting occurred on April 1, 2008.

[3]In his Post Trial Memorandum, the Chapter 7 Trustee states that the case was converted on November 19, 2007.  It was not.  The case was converted on November 15, 2007 [docket # 326].  Because the court is awarding sanctions based on the value of the stock on the conversion date, the Court will order the Chapter 7 Trustee to file an affidavit as to the value of the stock at the close of business on November 15, 2007.

to the Chapter 13 Trustee's Final Report, the Debtor paid a total of $28,700.

**DISCUSSION**

When a case under chapter 13 is converted to a case under another chapter, "property of the estate of the converted case shall consist of all property of the estate as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion...." 11 U.S.C. § 348(f)(1)(a).  Under this section, all non-exempt assets in the chapter 13 case would become property of the chapter 7 estate unless the debtor had authority to dispose of the asset, either by Court order or pursuant to the Bankruptcy Code.  Because there was no order authorizing the sale of the Stock, the Chapter 7 Trustee asserts that the Debtor's conduct in liquidating the non-exempt Stock was contemptuous while the Debtor responds that he did nothing improper.  He claims the liquidation of the Stock to fund his plan payments falls within the ordinary course of business and cites 11 U.S.C § 1303 as authority for his proposition.

Section 1303 is inapplicable to this case as it grants a debtor, exclusive of the Chapter 13 Trustee, "the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l)..."  The right to use property of the estate in the ordinary course of business is found in § 363(c), a subsection not incorporated into § 1303.  It is § 1304, a section applicable only to a chapter 13 debtor who is "self-employed and incurs trade credit in the production of income from such employment..." that permits the use of property of the estate in the ordinary course of business.  The Debtor does not assert that he falls within the ambit of § 1304.[4]

*Boyer v. Gildea*, 374 B.R. 645 (N.D.Ind. 2007), cited by the Debtor, is not applicable to

---

[4] The Court takes judicial notice of the Debtor's Schedule I, in which he lists his occupation as manager of Java Brewing, and Schedule J, which lists income from operation of a business as $0.

the instant case. Although the Debtor correctly quotes the two-prong test courts have adopted for determining whether an action is within the ordinary course of business, he ignores the fact that, at its essence, *Boyer* recognizes that the test compares the transaction at issue with comparable transactions entered into by similar *businesses*, and examines whether the transaction at issue exposes a hypothetical creditor of the *business* to risks different than the risks when credit was first extended.

      Nor does the Debtor's argument that he used the money to make plan payments exonerate him. In *In re Beesley*, 139 B.R. 247 (Bankr. D. Idaho 1992), the chapter 13 debtor had sold a boat postpetition without court authority. His justification was that he used the money to make plan payments. The trustee sued both the debtor and the transferee under § 549.[5] The court quickly disposed of the debtor's argument that the sale was in the ordinary course of business by noting that the debtor's business was selling and leasing mobile homes, not selling boats. In rejecting his argument that he used the proceeds to fund his plan, the court stated:

> The use of the proceeds from the sale of the boat to fund the debtor's unconfirmed chapter 13 plan does not relieve the debtor of the consequences arising from the unauthorized sale of the boat. A chapter 13 debtor is required to be " ... an individual with regular income ..." with which to fund a plan. The use of the proceeds of an unauthorized sale to fund an unconfirmed chapter 13 plan does not vitiate the avoidability of the transaction. It is not a transaction authorized by the code.

*Id*. at 248.

      Both the Code and the confirmation order are clear: the Debtor was required to preserve

---

[5] 11 U.S.C. § 549(a) provides in pertinent part: " ... the trustee may avoid a transfer of property of the estate-(1) that occurs after the commencement of the case; and ... (B) that is not authorized under this title or by the court."

and protect the estate's property, including the Stock.  Section 105(a) of the Bankruptcy Code permits the Court to impose sanctions for the Debtor's failure to abide by the Code and the confirmation order.  *Jamo v. Katahdin Federal Credit Union (In re Jamo )*, 283 F.3d 392 (1st Cir. 2002)*;  In re Paige*, 365 B.R. 632 (Bankr. N.D.Tex. 2007).  Although the Court is aware that the Debtor was not represented by his former counsel and was acting *pro se* when he sold the Stock, the Court also notes that during this same period, the Debtor filed several pleadings, including for extensions of time to make plan payments, without informing the Court that he intended to sell the Stock to make the payments. More importantly, the Debtor's testimony that he devoted all of the proceeds from the sale of the Stock is not credible as he also testified that he only repaid Effie Messados and Anastasios Fatsis amounts which they had loaned him to pay to the Chapter 13 Trustee.[6]  The amounts he received, however, exceed what he paid to the Chapter 13 Trustee.  His actions were undertaken in bad faith and appear to be motivated by an attempt to pay what was needed to avoid dismissal of the case but less than the full amount he received, including from non-exempt assets.

The amount of sanctions, as well as the form of sanctions, is committed to the Court's discretion.  *Jamo*, 283 F.3d. at 403.  In the instant case, the Chapter 7 Trustee seeks $19,160, the value of the Stock on the conversion date, as sanctions.  Such an award would give the Chapter 7 Trustee the benefit of the appreciation of the Stock, which the Court finds although permissible, is not the appropriate measure in this case.  The Court is also mindful that the case was

---

[6] In the Debtor's affidavit of October 24, 2007, which was admitted as Trustee's Exhibit 5, the Debtor testified that, although Effie Messados and Anastasios Fatsis had no expectation of repayment, he felt a moral obligation to repay them and noted that he still owed one of the individuals additional money.

converted on November 15, 2007 and the demand the Chapter 7 Trustee's demand for the Stock occurred sometime thereafter. There was no evidence as to the value of the stock during this period. The Court finds that a more appropriate sanction is $13,332.43, the actual amount the Debtor received upon the Stock's liquidation.

### CONCLUSION

For the reasons set forth herein, the Chapter 7 Trustee's Motion to Hold Debtor in Contempt for Violation of Confirmation Order Dated May 13, 2004 and for Sanctions will be GRANTED and a sanction in the amount of $13,332.43, payable to the Chapter 7 Trustee, will be awarded.

A separate order will issue.

Dated: November 14, 2008                    _____

                                                                                    Joel B. Rosenthal
                                                                                    United States Bankruptcy Judge